IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

United States of America

     v.                        Case No. 2:17-cr-210

John Frazier Odoms, III


OPINION AND ORDER

This matter came before the court on June 4, 2018, for an evidentiary hearing on defendant's motion to suppress evidence obtained during a search of defendant's person following his arrest on September 12, 2017, and a search of the vehicle which defendant had entered immediately prior to his arrest.

Defendant alleged in his motion that on September 10, 2017, local news sources reported the use of force by police officers against Timothy Davis, an African-American. That evening, the People's Justice Project of Ohio engaged in a demonstration at Columbus City Hall, protesting the police action and demanding an investigation. Shortly thereafter, a video was released which included comments made by a Columbus police officer who asked one of the officers who arrested Mr. Davis why he didn't "just choke the [] life out of him?" In response to these videos, defendant, who is also African-American, allegedly posted emotionally charged comments on social media websites which advocated killing white police officers and their families. Defendant alleges that Columbus police officers decided to locate and detain him on an outstanding arrest warrant based on his race and in retaliation for his exercise of First Amendment rights in posting messages on social media, and that the ensuing searches of his person and the vehicle he was arrested from were therefore constitutionally

invalid.

<u>I. Evidence Presented</u>

Columbus Police Officer Joseph Houseberg, a patrol officer in the Seventh Precinct, testified at the hearing that he learned that defendant had used social media to make threats against white police officers and their families. He was informed that these posts urged the killing of all white officers and the rape of their wives. Officer Houseberg was unaware of any reports that defendant had personally threatened specific officers. Officer Houseberg testified that after learning of defendant's posts, he obtained a LEADS report concerning defendant's criminal history, which included prior arrests for domestic violence, aggravated burglary, burglary, and having a weapon while under disability, as well as a past history of resisting arrest. The first page of the LEADS report, Government's Exhibit 2, stated that defendant was a "WANTED PERSON-CAUTION" with the additional notations "ARMED AND DANGEROUS," "VIOLENT TENDENCIES" and "KNOWN TO ABUSE DRUGS."

The LEADS report also indicated an outstanding warrant for failure to appear in court in Delaware County on marijuana possession and open container charges. Officer Houseberg testified that he contacted the Delaware Police Department and verified that the arrest warrant was still active and outstanding, and that the Delaware agency wanted to enforce the warrant. Officer Houseberg also learned that defendant's Ohio driver's license had been suspended. He obtained a possible address for defendant. Officer Houseberg testified that patrol units are among several units which execute outstanding warrants. Although the defendant's address was outside Officer Houseberg's assigned precinct, his supervisor

authorized him to look for the defendant to arrest him on the outstanding warrant.

On September 12, 2018, Officer Houseberg and Officer Brumfield proceeded in a marked cruiser to a location near an address connected to the defendant. Officer Pelligrini, who was in civilian clothes in an unmarked cruiser, parked near the address and monitored a vehicle parked outside which matched a photograph of the vehicle posted by defendant on social media. Officer Houseberg testified that while waiting, he watched a video on social media of defendant making violent gestures. Officer Pelligrini observed defendant leave the apartment. Defendant entered the vehicle and started the car. Officer Brumfield then drove to the address, parked the cruiser to the rear of the defendant's vehicle, and approached the vehicle to arrest the defendant. In addition to Officer Houseberg's testimony concerning the arrest, the government introduced a DVD at the hearing which contained audio and visual recordings from the officers' body cameras.

Officers Brumfield and Houseberg exited the cruiser and approached defendant's vehicle with their guns drawn. Officer Brumfield went to the driver's side door, and Officer Houseberg went to the passenger side. They yelled at defendant to get out of the car. Their voices were raised as they approached because the car windows were closed. Officer Houseberg observed defendant reach down to the floor of the vehicle with his left hand. The officers warned defendant that they would break a window if he did not unlock the vehicle. When defendant failed to unlock the vehicle, Officer Houseberg broke the passenger window with his

baton and unlocked the car.

Officer Houseberg further testified that Officer Brumfield opened the driver's side door. Defendant got out of the vehicle, and Officer Brumfield handcuffed defendant with his arms behind his back. The video does not reveal any use of force against defendant that could be considered excessive or unreasonable. Defendant asked why he was being arrested, and was told that there was a warrant for his arrest. Officer Houseberg observed the black handle of a firearm sticking out of defendant's pocket. Officer Brumfield asked defendant if he had a gun, and defendant responded that he did. Officer Houseberg removed the gun from defendant's pocket and placed in on the top of the vehicle. Defendant was placed under arrest on the warrant and for CCW (carrying a concealed weapon). These events occurred over a period of less than two minutes.

Defendant was searched and secured in the cruiser. Officer Brumfield placed the gun in a bag to be collected as evidence. Defendant stated that the vehicle was not his car, and denied that he was driving the car. One of the officers noted that defendant was "tripping" about the car (or nervous about what a search of the car might reveal). A tow truck was requested for the vehicle, and Officer Houseberg started an inventory sheet in preparation for impounding the vehicle. He testified that because defendant was a suspended driver in control of a vehicle with the motor running, and because defendant was arrested from the vehicle, the circumstances satisfied city requirements for impounding vehicles, as well as the directions of his supervisor regarding impounding the vehicles of unlicensed drivers. The impound sheet was

completed to note the damage to the window and to inventory the contents of the vehicle. Officer Houseberg looked under the driver's side seat where defendant had reached with his left hand. He found a box under the middle portion of the driver's seat which contained small bundles of suspected heroin and cocaine in plastic baggies.

Defendant was subsequently indicted in the instant case for one count of being a felon in possession of a firearm, one count of possession with intent to distribute cocaine base, and one count of possession with intent to distribute heroin.

## II. Validity of Arrest

The officers in this case initially approached defendant to detain him on an active arrest warrant from Delaware County. This warrant was listed in the LEADS report which was viewed by Officer Houseberg prior to defendant's arrest. Officer Houseberg also called the agency in Delaware and confirmed that the warrant was still active and that Delaware County was willing to extradite and come and take custody of the defendant on this warrant.

Suggesting that Officer Houseberg did not verify that the arrest warrant was still active until after the arrest, defense counsel asked him about a September 12, 2017, entry in LEADS which reported that the defendant was in custody and asked the Delaware County agency to advise if their warrant was still good and if they wanted to extradite the defendant. See Defendant's Exhibit B. In that same report, the Delaware County Police Department confirmed that the warrant was good and that they would extradite the defendant. However, Officer Houseberg testified that this request for information was entered after defendant's arrest by a clerk,

and that the entry received in response was simply a subsequent confirmation of the earlier information which he received by phone prior to defendant's arrest. The court finds that the testimony of Officer Houseberg is credible. The evidence presented at the hearing established that Officer Houseberg arrested defendant based on a valid arrest warrant from Delaware County which he verified prior to locating defendant.

Defendant also makes much of the fact that the outstanding warrant was for the failure to appear in court on two minor misdemeanor charges. However, that does not detract from the validity of the warrant. Bench warrants serve the important function of ensuring the appearance of defendants so that criminal proceedings can proceed to a conclusion. The court finds that defendant's arrest was based on a valid and active warrant from Delaware County.

## III. Search of Defendant's Person Incident to Arrest

One exception to the warrant requirement is a search incident to arrest. United States v. Smith, 549 F.3d 355, 359 (6th Cir. 2008). An officer may conduct a warrantless full search of an arrestee's person incident to a lawful custodial arrest. United States v. Robinson, 414 U.S. 218, 234-35 (1973)(exception to the Fourth Amendment warrant requirement is based on the need to disarm the suspect in order to take him into custody and the need to preserve evidence on his person for later use at trial); United States v. Montgomery, 377 F.3d 582, 586 (6th Cir. 2004). After defendant exited the vehicle, Officer Houseberg observed the black handle of a gun sticking out of defendant's pocket. The firearm was properly seized during a valid search of defendant's person

incident to arrest.

IV. Search of the Vehicle

The right to search a motor vehicle incident to arrest was narrowed in Arizona v. Gant, 556 U.S. 332, 351 (2009). After Gant, police may search a vehicle incident to a recent occupant's arrest: 1) if the arrestee is within reaching distance of the passenger compartment at the time of the search; 2) if it is reasonable to believe the vehicle contains evidence of the offense of arrest; or 3) if some other exception to the warrant requirement applies.

The first exception in Gant follows Michigan v. Long, 463 U.S. 1032, 1049 (1983). In that case, the Supreme Court held that police may engage in a protective search of a vehicle passenger compartment after the defendant is removed from the vehicle when the officer has a reasonable suspicion that the individual or a passenger is dangerous and might access the vehicle to gain immediate control of a weapon. See United States v. McCraney, 674 F.3d 614, 620 (6th Cir. 2012). This exception to the warrant requirement is based on ensuring the safety of the officers. It does not apply in this case, as defendant was placed under arrest and secured in the cruiser at the time the vehicle was searched.

The second prong in Gant permits a search of the vehicle incident to arrest if it is "reasonable to believe" that evidence relevant to the offense of arrest will be found in the vehicle. This "reasonable to believe" standard may be less than probable cause and more akin to the "reasonable suspicion" standard required to justify a stop and frisk under Terry v. Ohio, 392 U.S. 1, 21-22 (1968). See United States v. Edwards, 769 F.3d 509, 514 (7th Cir. 2014); United States v. Rodgers, 656 F.3d 1023, 1028 n. 5 (9th Cir.

2011); <u>United States v. Vinton</u>, 594 F.3d 14, 25 (D.C.Cir. 2010). A suspect can be arrested for multiple crimes, and "[w]hen that's the case, the police can search a vehicle incident to arrest if they have reason to believe that the vehicle contains evidence of <u>any</u> of the offenses of arrest. Nothing in <u>Gant</u> prohibits this." <u>Edwards</u>, 769 F.3d at 515.

The Delaware County arrest warrant for failure to appear would not justify the search of the vehicle under the second <u>Gant</u> exception, as the officers could not expect to find any evidence concerning defendant's failure to appear in the vehicle. However, Officer Houseberg testified that defendant was also arrested for CCW based on the firearm seized from his pocket as he was being secured outside the vehicle. Defendant was seen reaching down to the area under the seat, and appeared nervous about what might be found in the car, claiming that it was not his vehicle. Officer Houseberg was also aware from the LEADS report that defendant could be armed and dangerous and that he had a past history of weapons offenses. The officers could reasonably believe that additional weapons or ammunition relevant to the CCW offense might be found in the vehicle. <u>See</u> <u>United States v. Johnson</u>, 627 F.3d 578, 584 (6th Cir. 2010)(upholding the search of defendant's vehicle after he had been arrested for possession of a firearm because the police "could have reasonably believed that ammunition or additional firearms were in the car or in containers in the car, especially in the passenger area searched by police that was formerly occupied by Johnson").

The drugs found in the vehicle were also discovered pursuant to a valid inventory search. An inventory search is an exception

to the warrant requirement of the Fourth Amendment. <u>United States</u> <u>v. Hockenberry</u>, 730 F.3d 645, 658 (6th Cir. 2013)(citing <u>Colorado</u> <u>v. Bertine</u>, 479 U.S. 367, 371 (1987)). Discretion as to impoundment is permissible so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity. <u>Hockenberry</u>, 730 F.3d at 658. An impoundment decision is not rendered impermissible simply because alternatives to impoundment may exist. <u>Hockenberry</u>, 730 F.3d at 658. Impoundment is permissible even though the arrested driver was not offered an opportunity to make other arrangements. <u>Colorado v. Bertine</u>, 479 U.S. 367 (1987). Although an inventory search may not be undertaken for the purposes of investigation, the mere fact that an officer suspects that contraband may be found in a vehicle does not invalidate an otherwise proper inventory search. <u>Hockenberry</u>, 730 F.3d at 659.

Officer Houseberg started an inventory sheet prior to searching the vehicle. The decision to impound the vehicle was made pursuant to standard procedures. Officer Houseberg testified that because defendant was a suspended driver found in control of a vehicle with the motor running, and because defendant was arrested from the vehicle, the circumstances satisfied city requirements for impounding vehicles, as well as the directives of his supervisor regarding impounding the vehicles of unlicensed drivers. The impound sheet was completed to note the damage to the window and to inventory the contents of the vehicle. Logging any property found in the vehicle was particularly important because defendant stated that the vehicle was not his. The decision to impound the vehicle was also reasonable due to the car's broken

window, which would have invited thieves to loot the car if it had been left where it was. The drugs discovered during the course of the inventory search are admissible as evidence.

## V. Subjective Intent of the Officers

Generally, if an officer has probable cause to arrest based on a valid arrest warrant, the resulting arrest is lawful irrespective of the subjective motive of the officers. See <u>Whren v. United States</u>, 517 U.S. 806, 813-15 (1996). See <u>Mesa v. Prejean</u>, 543 F.3d 264 (5th Cir. 2008)(if an officer has probable cause to arrest, ordinarily there can be no inquiry into whether the officer was also motivated by comments made by the arrestee). The permissibility of a particular law enforcement practice is ordinarily judged by balancing its intrusion on an individual's Fourth Amendment interests against its promotion of legitimate governmental interests. <u>Delaware v. Prouse</u>, 440 U.S. 648, 654 (1979). However, where the arrest is based on probable cause, there is typically no need to conduct an analysis balancing governmental and individual interests under the Fourth Amendment. <u>Whren</u>, 517 U.S. at 816-17.

The Supreme Court in <u>Whren</u> stated that where probable cause exists, an inquiry into the subjective motives of the officers or a balancing analysis is only warranted in cases alleging selective enforcement of the law based on an impermissible factor such as race, or cases involving "searches or seizures conducted in an extraordinary manner, unusually harmful to an individual's privacy or even physical interests" such as seizure by means of deadly force, unannounced entry into a home, entry into a home without a warrant, or physical penetration of the body. <u>Id</u>. at 813, 818.

Defendant alleges that the officers were subjectively motivated to locate and arrest him in retaliation for his exercise of First Amendment rights and due to his race. He argues that this case therefore presents circumstances under <u>Whren</u> which warrant an inquiry into the subjective motives of the offices.

It is questionable that defendant's posts, which called for the killing of white police officers and the rape of their wives, fall within the scope of the First Amendment. True threats are not protected by the First Amendment. <u>United States v. Coss</u>, 677 F.3d 278, 289 (6th Cir. 2012); <u>United States v. Hankins</u>, 195 F. App'x 295, 301 (6th Cir. 2006)(the First Amendment does not protect threats of violence). A true threat is a statement which the speaker means to communicate as a serious expression of an intent to commit an unlawful act of violence to a particular individual or group. <u>Virginia v. Black</u>, 538 U.S. 343, 359 (2003); <u>Hankins</u>, 195 F. App'x at 301 (a true threat is a statement that an objective rational observer would tend to interpret in its factual context as a credible threat). The speaker need not actually intend to carry out the threat. <u>Black</u>, 538 U.S. at 360. Rather, this First Amendment exception is intended to protect individuals from the fear of violence and the disruption that fear engenders, as well as from the possibility that the threatened violation will occur; intimidation is a type of true threat. <u>Id.</u> A statement need not be communicated directly to the targeted individual in order to constitute a true threat (comments on YouTube or Facebook can qualify), and a statement can be a true threat even if the speaker lacks the ability to make good on his promised aggression. <u>United States v. Houston</u>, 683 F. App'x 434, 438 (6th Cir. 2017).

Considering the fact that recent news reports have included incidents of police officers being shot by ambush, and taking into account the officers' knowledge of defendant's prior criminal record, the officers could reasonably interpret defendant's posted comments as credible threats and serious expressions of an intent to commit acts of violence against Columbus police officers and their families.

Even assuming that defendant's posts constituted protected speech and that an examination of the officers' subjective intent is warranted, the court concludes that this case is not one involving selective enforcement based on race or some other protected constitutional interest. See Whren, 517 U.S. at 818. There is no evidence from which the court can reasonably infer that the officers' decision to execute the arrest warrant was motivated by the defendant's race or by a subjective intent to retaliate against defendant for making the posts. Officer Houseberg agreed that an arrest based on race or racial views would be improper. Officer Houseberg testified that defendant was arrested because he had an outstanding warrant for his arrest.

Officer Houseberg testified that he was concerned about the posts. Even if this court were to assume that the officers were also motivated to investigate defendant as a person who might carry out the threats of violence contained in those posts, this is not the same thing as wanting to retaliate against defendant simply because he made the posts. The record does not support defendant's allegations of retaliation. Based on Officer Houseberg's knowledge of defendant's threats to kill white officers and rape their wives and his familiarity with defendant's prior criminal record, his

12

concerns about the possibility that defendant might engage in violent acts against police officers were justified. The decision to arrest defendant on an active warrant so that the posts could be investigated was not unreasonable under the Fourth Amendment.

Considering and balancing all of the circumstances in this case and the interests of the parties, defendant's arrest and the ensuing searches were reasonable and valid under the Fourth Amendment.

VI. Conclusion

In accordance with the foregoing, defendant's motion to suppress (Doc. 21) is denied.


Date: June 8, 2018                    _____s/James L. Graham_____

                                      James L. Graham

                                      United States District Judge